**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CR-0004-CVE |
| | ) | |
| JIMMIE ESTES THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is defendant Thompson's motion to suppress (Dkt. # 26).  Thompson is charged in a superseding indictment with two counts of bank robbery, one count of brandishing and possessing a firearm in furtherance of a crime of violence, one count of possessing a firearm in furtherance of a crime of violence, and one count of felon in possession of a firearm and ammunition.  Dkt. # 18.

Defendant has moved to suppress the following evidence: any and all statements made by Thompson to law enforcement officers during or following his arrest on October 6, 2009; any and all evidence seized from Thompson's person during or following his arrest on October 6, 2009; and any and all evidence seized from Thompson's vehicle pursuant to a search warrant.  Dkt. # 26. Defendant argues that the evidence should be suppressed because: the arresting officers lacked probable cause to arrest Thompson; the affidavit in support of the search warrant failed to provide probable cause for issuance of the warrant; the affidavit contains false and/or misleading information, requiring a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978); and the good faith exception to the warrant requirement is inapplicable.  Dkt. # 26.  The United States disagrees. Dkt. # 30.  An evidentiary hearing was held on all issues on March 8, 2010.

# I.

Following the evidentiary hearing, the Court finds as follows: On September 28, 2009, the MidFirst Bank near the intersection of 41st Street and Peoria Avenue in Tulsa, Oklahoma was robbed.  The bank's cameras filmed the robber, a white male wearing a grey hooded jacket, dark baseball cap, and sunglasses.  The teller reported that the robber presented a bank deposit slip with the words "100-50-20.  This is a robbery," written on it. Detective Stout of the Tulsa Police Department (TPD) interviewed three bank employee eyewitnesses, who described the robber, provided the note, and reported that the robber fled in a purple Mercury Cougar or Pontiac Bonneville.   Security cameras from Robertson Tire, a nearby business, filmed the robber fleeing in a purple Mercury Cougar.  The TPD provided still photographs of the robber from the security video to the media, in hopes of generating leads.

On October 5, 2009, the IBC bank near the intersection of 71st Street and Memorial Drive in Tulsa, Oklahoma was robbed.  The bank's cameras filmed the robber, a white male wearing a tan jacket and red baseball cap.  The teller who was robbed described the suspect as a white male, approximately 5'10", age 30-40.  The robbery note that stated "100-50-20.  This is a robbery," and "no dye packs" was left at the scene.  Witnesses reported that the robber fled in a silver Chevrolet HHR with a paper license tag.  Still photographs from the IBC security video were also provided to the media.  Based on the robbery notes, descriptions of the robbers, and his review of the three security videos, Stout concluded that the same person robbed both banks.

On October 6, 2009, Sergeant Walker of the TPD received a "Crime Stoppers" call from an anonymous informant who recognized Thompson as the robbery suspect from a video he had seen. The caller provided Thompson's name, age, a physical description, and the car that he drove - a

purple Mercury Cougar.  This description was consistent with that given by the MidFirst Bank employee eyewitnesses.  Walker also received another tip about Thompson on that date from a confidential informant  who was speaking to a narcotics officer.  Stout obtained photographs of Thompson from his driver's license and TPD and Department of Corrections records.  Stout, Walker, and one other TPD officer compared these photographs with the three security videos and concluded that Thompson was the bank robber.  Stout believed that the tips were reliable based on the information provided and his own comparison of photographs of Thompson with the security videos.

TPD received a third tip that Thompson was the bank robber and that he could be located at the Claremore Indian Hospital.  An individual who had been incarcerated with Thompson called the Nowata, Oklahoma Sheriff's Office, which contacted the TPD.  The informant stated that he, by chance, ran into Thompson at the Claremore Indian Hospital.  He stated that Thompson pulled a newspaper out of his back pocket, pointed to an article about the robberies and asked "do you know who this is?"  The informant replied "that's you."  Thompson said "yeah I did two of them."  They had a conversation about the money, and Thompson stated that he was at the hospital because "the heat was on him" and he was trying to avoid law enforcement.  He also said that he planned to "do another bank" before leaving town.  The informant reported that Thompson had dyed his hair orange.

The same day, Sergeant Walker contacted Rogers County, Oklahoma Sheriff Walton and advised him of the information being gathered.  Walton told Walker that his office was already looking for a purple Mercury Cougar.  Walton contacted Investigator Singer of the Claremore, Oklahoma Police Department (CPD).  At around 2:00 p.m. Walton informed Stout that he spotted

3

a purple Mercury Cougar in the parking lot of the Claremore Indian Hospital, and that he observed a white male with dyed blonde hair entering the vehicle.  TPD officers contacted the Federal Bureau of Investigation (FBI).[1]  Singer testified that he conducted surveillance of Thompson and his vehicle for about 15-20 minutes before the TPD and FBI arrived.  When Special Agent McCullough of the FBI arrived, McCullough and CPD officers ordered Thompson out of his vehicle and arrested him.  Detective Parish of the TPD had informed McCullough of the Crime Stoppers tip and the tip regarding the meeting at the Claremore Indian Hospital.  McCullough testified that TPD officers were walking up to the scene as he was handcuffing Thompson.

After Thompson was taken into custody, Walker asked to search the vehicle.  Thompson refused.  The administrator of the Claremore Indian Hospital requested that the vehicle be towed, and Singer secured it and supervised its transport to a storage unit.[2]  McCullough transported Thompson to Tulsa, Oklahoma.  McCullough testified that Thompson made voluntary, inculpatory statements during this trip.  Thompson had not been informed of his <u>Miranda</u> rights at this time.

Meanwhile, TPD officers prepared a photographic lineup and showed it to four eyewitnesses.  None identified any photograph as depicting the bank robber.[3]  The photographic lineups took place

---

[1]     Multiple law enforcement agencies were involved because Stout had concerns regarding jurisdiction to arrest Thompson while on the grounds of the Claremore Indian Hospital.

[2]     McCullough testified that the FBI could have impounded the vehicle if it had not been towed.  He testified that if the FBI had impounded it, the FBI could have conducted an inventory search.

[3]     TPD also received a tip connecting a different individual to the bank robberies.  Detective Stout testified that, after viewing the second individual, Stout immediately recognized that he was not the robbery suspect.  The second individual was included in the photographic lineup that resulted in no identifications.

between 2:00 and 3:00 p.m. on October 6, 2009.  Thompson was in custody before the arresting officers were informed of the results of the photographic lineups.

On October 8, 2009, Stout met with Investigator Singer, and told Singer that he wanted to search Thompson's vehicle.  Stout prepared an affidavit for Singer and provided case notes to Singer.  By this time, Singer was aware of the results of the photographic lineups, but did not think that information needed to be included in the affidavit because it is not uncommon for eyewitnesses to fail to identify anyone as the suspect in a photographic lineup.  Further, he thought it was more important that Thompson was arrested in a vehicle that matched the description of the MidFirst Bank getaway car and that officers matched him with descriptions and photographs of the robber.

The same day, Singer presented the affidavit to a Rogers County Special District Judge.  The affidavit states that witnesses to the MidFirst Bank robbery observed a white male fleeing in a "1990's model Mercury Cougar two door, purplish color vehicle."  Dkt. # 26, at 14.  It states that on October 6, 2009 "an anonymous caller called Crime Stoppers and gave the name of the suspect as Jimmie Thompson.  The caller reported to the [TPD] Robbery Unit Sgt. Walker that Jimmie Thompson drove a purple Mercury Cougar as described in the MidFirst Bank robbery.  Furthermore, your affiant states that the [TPD] was notified that Jimmie Thompson was located at the Claremore Indian Hospital with his 1994 Mercury Cougar."  Id.  The affidavit further states that Officer Singer "assisted the [TPD], Federal Bureau of Investigation, and the Rogers County Sheriffs Office in surveillance of the vehicle and the arrest of Jimmie Thompson.  Detectives observed that Jimmie Thompson matched the person seen in the video surveillance images from MidFirst Bank and IBC Bank."  Id. at 14-15.  Singer testified that two officers told him that they matched photographs of Thompson with the surveillance videos, and that he was present when Walker made an in-person

5

identification at the time of Thompson's arrest.  The Special District Judge issued a warrant authorizing law enforcement officers to search Thompson's vehicle.  Id. at 13.  Stout and Singer searched Thompson's vehicle and recovered clothing, a newspaper, and a semi-automatic pistol in the trunk.

## II.

A.    The Arrest

Thompson argues that the arresting officers lacked probable cause to arrest him.  Dkt. # 26, at 3-6.  It is undisputed that Thompson was arrested without a warrant on October 6, 2009.  "To be lawful, a warrantless arrest must be supported by probable cause to arrest."  United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998); see also Beck v. State of Ohio, 379 U.S. 89, 92 (1964) ("whether [an] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it").  The government has the burden to show that the arrest was supported by probable cause.  See United States v. Jeffers, 342 U.S. 48, 51 (1951) (stating that the burden is on those seeking an exemption to the warrant requirement).  The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules."  Illinois v. Gates, 462 U.S. 213 (1983).

> Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Although it is not necessary that the officer possess knowledge of facts sufficient to establish guilt, mere suspicion is insufficient to establish probable cause . . . . [P]robable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer.

United States v. Edwards, 242 F.3d 928, 934 (10th Cir. 2001) (quoting United States v. Maher, 919 F.2d 1482, 1485-86 (10th Cir. 1990)).  An individual officer's subjective belief does not establish probable cause; the government must present specific information from which the Court can objectively determine there was probable cause.  Beck, 379 U.S. at 96; see also Devenpeck v. Alford, 543 U.S. 146, 154 (2004); Fogarty v. Gallegos, 523 F.3d 1147, 1156 (10th Cir. 2008) ("our determination [of probable cause] is an independent and objective one," and, thus, "an officer's own subjective reason for the arrest is irrelevant").

The government argues that the officers had probable cause to arrest Thompson because: Thompson's automobile matched some witnesses' descriptions and video identification of the getaway car in the MidFirst Bank robbery; three tips provided information that Thompson was the bank robber; and TPD officers compared Thompson's photographs with video stills from the bank robberies and determined that Thompson was the robber.  Dkt. # 30, at 2-3.  Thompson argues that the officers did not have probable cause because: officers could not rely on the tips, and eyewitnesses failed to identify Thompson in the photographic lineups.  Dkt. # 26, at 5.

When an arrest or warrant is based on an anonymous tip, a court must determine whether, under the totality of the circumstances, the tip established probable cause.  Illinois v. Gates, 462 U.S. 213, 230-31 (1983).  Relevant factors include the informant's veracity, reliability, and basis for knowledge.  Id.  One risk of relying on anonymous tips is that the motives of an anonymous tipster may not be benign.  Anonymous tips must also be specific, because "overly generic tips, even if made in good faith, could give police excessive discretion to stop and search large numbers of citizens."  United States v. Sanchez, 519 F.3d 1208, 1213 (10th Cir. 2008).  Therefore, anonymous tips, without minimum "indicia of reliability," cannot establish probable cause.  See Florida v. J.L.,

7

529 U.S. 266, 270-71 (2000) (holding that an anonymous tip from an unknown caller that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun did not give officers a reasonable basis for suspecting defendant of engaging in unlawful conduct); see also United States v. Soto-Cervantes, 138 F.3d 1319, 1322-23 (10th Cir. 1998) (holding that an anonymous tip naming a particular address, describing a group of men, and identifying a particular vehicle was too general to support reasonable suspicion by itself).

The government contends that the arresting officers did not rely on the anonymous tips alone, but also relied on detectives' own identifications of Thompson based on a comparison of his photographs with the bank videos.  Further, the second and third tips were not anonymous - the second was a known TPD confidential informant; the third identified himself to the Nowata Sheriff's office.  In an unpublished case, the Tenth Circuit stated that "even anonymous tips, when supplanted by independent police investigation may be sufficient despite the absence of any indication of the anonymous informant's veracity, reliability, or basis of knowledge."  United States v. Zarif, 192 Fed. App'x 784, 790 (10th Cir. 2006) (unpublished).[4]   If an anonymous tip (and, in this case, two additional non-anonymous tips) merely prompt police to conduct their own investigation, and that investigation reveals information supporting probable cause, the one anonymous tip need not be as reliable as a tip that is the sole basis for probable cause.  See United States v. Jones, No. 3:06-CR-21, 2007 WL 1725263, at *1 (E.D. Tenn. June 12, 2007) (unpublished) ("the fact that a confidential informant called [officer] and prompted [him] to recognize and identify the defendant is of little moment.  The important consideration is whether [officer] independently recognized and identified

---

[4]      Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1: 10th Cir. R. 32.1.

the defendant after receiving the call").  In this case, officers could look to the tips as some evidence supporting probable cause.

Thompson's anonymous tip cases are not squarely on point.  In <u>J.L.</u> and <u>Soto-Cerrvantes</u>, the police did not have reason to believe a crime had been committed when they received the anonymous tips.  In this case, the police knew that two bank robberies had been committed, but the identity of the robber was unknown.  The tips helped police identify Thompson as the robbery suspect.  Thus, this case is more akin to <u>United States v. Allen</u>, 235 F.3d 482, 488 (10th Cir. 2000), in which "identity [was] the only matter in question."  In <u>Allen</u>, there was a warrant for Allen's arrest.  An anonymous caller informed police that Allen was at a particular address, and described him.  Police went to the house, confirmed the description given by the dispatcher,[5] and arrested Allen.  <u>Id.</u> at 485.  The Tenth Circuit distinguished <u>J.L.</u> because, in <u>J.L.</u>, "the [Supreme] Court invalidated the stop and frisk in large part because the anonymous tip failed to give reliable information that a crime had been or was being committed."  <u>Id.</u> at 488.  The Tenth Circuit found that, "for the limited purpose of establishing identity, the tip was sufficiently corroborated" because the vehicle and individual described by the anonymous caller were present at the location described, and "the fact that individual identified by the tip was indeed Gavin Allen was corroborated when that person identified himself as Gerald Allen, but later referred to the vehicle as his brother Gerald's car."  <u>Id.</u>  This case is similar.  Before the tips in this case, police already had probable cause to believe that bank robberies had been committed.  The tips concerned the identity and whereabouts of the suspect.  The information in each of the tips was corroborated by the other tips,

---

[5]     Allen also gave his name as "Gerald Allen," rather than "Gavin Allen," but then told police his identification was in his brother Gerald's car.  <u>Allen</u>, 235 F.3d at 488.

the TPD officers' independent comparison of Thompson's picture with the security videos, and Thompson's presence - with his purple Mercury Cougar - at the Claremore Indian Hospital.

Thompson also argues that the officers lacked probable cause to arrest him because eyewitnesses failed to identify him in a photographic lineup. The eyewitnesses failed to identify anyone as the robbery suspect. This does not defeat probable cause, given that several officers had the opportunity to make the comparison between Thompson's photographs and the security videos and the fact that Thompson was spotted with a vehicle that matched the description of the MidFirst Bank getaway car.

Under the totality of the circumstances, including the consistent information provided in three separate tips, TPD officers' review of photographs of Thompson and the three security videos, and the fact that Thompson was found in a car matching the description of one of the getaway cars, officers had probable cause to arrest Thompson.

B.   The Warrant

Thompson contends that the search warrant was improperly issued because the affidavit did not establish probable cause. Dkt. # 26, at 6-8. In the context of search warrants, the Tenth Circuit requires that a magistrate issuing a search warrant find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Gates, 462 U.S. at 238). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990). A magistrate may consider the affiant's experience as part of his probable cause determination. United States v. Soussi, 29 F.3d 565, 569 (10th Cir. 1994). When reviewing the search warrant affidavit, this Court must "interpret [the

10

affidavit] in a common sense and realistic fashion." <u>United States v. Grimmett</u>, 439 F.3d 1263, 1270 (10th Cir. 2006).  A reviewing court must show great deference to the magistrate's finding of probable cause and the magistrate's finding should be upheld if the magistrate had a "'substantial basis' for determining that probable cause existed." <u>United States v. Perrine</u>, 518 F.3d 1196, 1201 (10th Cir. 2008) (quoting <u>United States v. Artez</u>, 389 F.3d 1106, 1111 (10th Cir. 2004)).

Thompson identifies two problems with the affidavit: its reliance on tips; and its reliance "upon an officer's subjective belief and conclusion that the images from the various surveillance cameras closely resemble a known image of . . . Thompson." Dkt. # 26, at 7.

Just as the arresting officers did not rely solely on the tips in arresting Thompson, the affidavit did not rely solely on the tips in establishing probable cause to search Thompson's vehicle. In addition to describing two of the tips, the affidavit states that "detectives observed that Jimmie Thompson matched the person seen in the video surveillance images from MidFirst Bank and IBC Bank." Dkt. # 26, at 14-15.  Further, the affidavit states that an eyewitness to the MidFirst robbery saw the robber flee to a "1990's model Mercury Cougar two door, purplish colored vehicle," and Thompson was found in a purple Mercury Cougar at the Claremore Indian Hospital. <u>Id.</u>  The fact that the affidavit did not refer to the informants as reliable is of no consequence because there was an independent basis for probable cause to believe that evidence of the bank robberies might be found in Thompson's purple Mercury Cougar.

Thompson also contends that the warrant was improperly issued because "the affidavit relies for its probable cause entirely upon an officer's subjective belief and conclusion that the images

from the various surveillance cameras closely resemble a known image of defendant Thompson."[6] Dkt. # 26, at 7.  Thompson suggests that the affidavit needed to describe Thompson or provide photographs so that the Special District Judge could independently determine whether Thompson's photograph matched the security videos.[7]  Id. at 7-8.  However, the affidavit does not rely solely on Officer Singer's belief that Thompson was the person shown on the bank videos.  Although it does not specifically identify the other officers, the affidavit states that "[d]etectives observed that Jimmie Thompson matched the person seen in the video surveillance . . . ."  Dkt. # 26, at 14.  The Special District Judge had evidence that multiple police officers observed Thompson and matched him with the images of the bank robber.  Thus, the affidavit does not rely solely on Officer Singer's belief that Thompson was the person in the videos.

C.      Franks Hearing

Thompson requested and was granted[8] an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978).  In Franks, the Supreme Court held that a criminal defendant may challenge the factual allegations of an affidavit supporting a search warrant and, in some circumstances, a defendant is entitled to an evidentiary hearing on this issue.  To obtain an evidentiary hearing, the defendant must make "a substantial showing that the affidavit contains intentional or reckless false statements and [that] the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause."  United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997) (citing Franks,

---

[6]     This statement belies Thompson's contention that the anonymous tip was a material part of the affidavit.  See Part. II.C, infra.

[7]     Thompson cites no caselaw requiring the magistrate judge to make an independent identification of the suspect.

[8]     The evidentiary hearing encompassed all issues raised by Thompson.

438 U.S. 154, and <u>Stewart v. Donges</u>, 915 F.2d 572, 581-82 (10th Cir. 1990)).  The allegations must be accompanied by an offer of proof.  <u>United States v. Williams</u>, 576 F.3d 1149, 1160 (10th Cir. 2009).  The Tenth Circuit has extended the <u>Franks</u> rule to include material omissions in addition to affirmative falsehoods in the affidavit.  <u>United States v. Avery</u>, 295 F.3d 1158, 1166 (10th Cir. 2002).

Thompson contends that Officer Singer "intentionally or recklessly failed to advise the magistrate that . . .  the [photographic] lineup was shown to at least one eyewitness, and that no eyewitness identified Defendant Thompson as the robber" and he "actively misled the magistrate by omitting from his affidavit the fact that the suspect vehicle at the Midfirst robbery was described by one other witness as a Pontiac Bonneville rather than a Mercury Cougar."  Dkt. # 26, at 8-9.

First, the mere fact that this evidence existed and was not included in the affidavit does not establish that Officer Singer intentionally or recklessly failed to include it.  <u>See</u> <u>United States v. Gonzales</u>, 399 F.3d 1225, 1229 (10th Cir. 2005) (affirming district court's denial of a <u>Franks</u> hearing where detective omitted information "not out of ill will, but simply as a result of inexperience").  Thompson must make an offer of some proof of intentional or reckless conduct by Officer Singer in order to be entitled relief under <u>Franks</u>.  Singer and Stout testified that information was omitted from the affidavit because they did not think it was important, not because they were trying to mislead the Special District Judge.  However, even assuming that Thompson made a sufficient showing on the first <u>Franks</u> requirement, he must also show that an affidavit including this information would not have supported probable cause.  <u>See</u> <u>Kennedy</u>, 131 F.3d at 1376.  In other words, Thompson must show that these omissions are material.  <u>Cf.</u> <u>United States v. Wright</u>, No. 09-

4005, 2009 WL 3358489, at *6 (10th Cir. October 20, 2009) (unpublished)[9] (finding no plain error in district court's failure to hold a <u>Franks</u> hearing because omission of fact that officer had made several unsuccessful attempts to coordinate drug deals with defendant was not material).

Stout testified that the information regarding one eyewitness' description of the MidFirst getaway car as a Pontiac Bonneville[10] rather than a Mercury Cougar was omitted because it was not consistent with other witnesses' identifications of a Mercury Cougar and the security video from Robertson Tire, which showed that the getaway car was a Mercury Cougar.  Stout and Singer both testified that it is common for witnesses to misidentify vehicle models.  Further, the robbery suspect was found in the vehicle for which the warrant was sought.  The Court finds that the misidentification of the make and model by one witness became immaterial because inclusion of that information would not have defeated probable cause.  There was substantial information in the affidavit that the MidFirst Bank getaway car was a purple Mercury Cougar and Thompson, the robbery suspect, was arrested in the purple Mercury Cougar to be searched.

Nor was omission of the photographic lineup evidence material.  Singer testified that it is not uncommon for witnesses to fail to identify anyone in photographic lineups.  He thought it was more important that the named suspect was arrested in the vehicle to be searched and that Thompson matched witness descriptions and the security videos.  If information regarding the photographic lineup had been included in the affidavit, the affidavit still would have contained information that multiple officers identified Thompson as the suspect from the videos, that the Crime Stoppers tip

---

[9]      Unpublished decisions are not precedential, but may be cited for their persuasive value.  <u>See</u> Fed. R. App. 32.1: 10th Cir. R. 32.1.

[10]     Singer testified that he was not aware of the Bonneville identification until after he submitted the affidavit to the Special District Judge.

identified Thompson as the robbery suspect and that Thompson drove a purple Mercury Cougar, and that Thompson was found with the vehicle. The photographic lineup evidence would not have defeated probable cause.

Thompson has failed to show that "the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." Kennedy, 131 F.3d at 1376.

D.      Good Faith

The government argues that the executing officers relied on the warrant in good faith and, even if a Fourth Amendment violation occurred, no evidence obtained in the October 8, 2009 search of Thompson's vehicle should be suppressed. Dkt. # 30, at 8-10. There is a presumption that an officer relying on a warrant is acting in good faith and, although this presumption is not absolute, it "must carry some weight" with the Court. United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993). When an officer relies on a warrant issued by a neutral magistrate, the good faith rule should apply unless the "the underlying documents are 'devoid of factual support'" or the officer's reliance on the warrant was "wholly unwarranted." Id.

The good faith exception applies when "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though the search warrant was later deemed to be invalid." United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 920 (1984)). Excluding evidence obtained by police in good faith reliance on a search warrant would not deter future police misconduct and would penalize police for a magistrate's error in issuing the warrant. Leon, 468 U.S. at 920-21. In Leon, the Supreme Court identified four exceptions to the good faith rule. If a warrant is invalid, the good faith rule does not prevent exclusion of evidence (1) "if the magistrate or judge issuing a

15

warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "where the magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979);" (3) in circumstances that "no reasonably well trained officer should rely on the warrant;" and (4) if a police officer relies on a warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 922-23.  The good faith exception also does not apply if police improperly execute a warrant.  The good faith exception to the exclusionary rule is intended to prevent the exclusion of evidence when a neutral third party has committed an error, but the good faith rule does not excuse police error in exceeding the scope of a search warrant or failing to comply with other terms of the warrant.  United States v. Angelos, 433 F.3d 738 (10th Cir. 2006).

Thompson argues that the first Leon exception applies, for the same reasons he argues Franks is applicable.[11]  Dkt. # 26, at 11.  This argument fails for the same reason as his Franks argument- the omitted information, if included, would not have defeated probable cause.  See Part II.C, supra. Thus, the Special District Judge was not misled.

_____

[11]   Thompson cites United States v. Peterson, 103 F. Supp. 2d 1259 (D. Colo. 2000), in support of his argument.  The government contends that the Peterson court "took language from two separate and distinct quotes of the Leon opinion which were out of context with each other and combined them."  Dkt. # 30, at 9.  This dispute is immaterial, as the Court does not rely on Peterson in making its determination in this case.  Further, the Peterson court found that there was no need for a Franks hearing and that the good faith exception to the warrant requirement applied.  103 F. Supp. 2d at 1265, 1270-71.  Thompson is correct that the Leon exception is inapplicable where the magistrate has been misled.  However, the term "misled" requires that the omission be material.  The Court has already determined that the omissions were not material.  See Part II.C, supra.  Therefore, the omissions do not defeat the good faith exception.

Thompson also argues that the fourth <u>Leon</u> exception applies because the affidavit in this case was so devoid of factual support that no reasonably well-trained officer could have relied on it.  Dkt. # 26, at 10.  However, the Court has already found that the affidavit did support probable cause.  <u>See</u> Part II.B, <u>supra</u>.  If this Court and the Special District Judge found that the affidavit established probable cause, it is not so devoid of support that a reasonably well-trained officer could not have relied on it.  Therefore, the results of the vehicle search would be subject to the good-faith exception to the exclusionary rule, if the exclusionary rule were to apply.

E.     <u>Inevitable Discovery</u>

The government argues that, if the Court were to find that the search of Thompson's vehicle violated the Fourth Amendment, suppression is not required because of the inevitable discovery rule.

> Although a search may violate the Fourth Amendment, the exclusionary rule is inapplicable if the evidence inevitably would have been discovered by lawful means. The "inevitable discovery exception applies whenever an independent investigation inevitably would have led to discovery of the evidence, whether or not the investigation was ongoing at the time of the illegal police conduct." The government has the burden of proving by a preponderance of the evidence that the evidence in question would have been discovered in the absence of the Fourth Amendment violation.

<u>U.S. v. Souza</u>, 223 F.3d 1197, 1202-03 (10th Cir. 2000) (quoting <u>United States v. Larsen</u>, 127 F.3d 984, 986 (10th Cir. 1997)).  The government argues that "if government officials had not decided to seek a search warrant for the vehicle, Thompson's vehicle would have been impounded pursuant to his arrest.  Once the decision to impound the vehicle was made, an inventory of the contents of that vehicle would have been made pursuant to the department's procedures."  Because the Court has found that the search was lawful, and that the good faith exception would except the search from the exclusionary rule even if unlawful, <u>see</u> Parts II. C, D, <u>supra</u>, the Court need not reach this issue.

17

**IT IS THEREFORE ORDERED** that defendant Thompson's motion to suppress (Dkt. # 26) is **denied**.

**IT IS SO ORDERED** this 9th day of March, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT