# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-CR-0004-CVE |
| | ) [Civil Case No. 13-CV-0697-CVE-PJC] |
| JIMMIE ESTES THOMPSON, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court are defendant Thompson's motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, Dkt. # 85, and motion to supplement, Dkt. # 91. Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Plaintiff responded to defendant's motion, Dkt. # 97, and defendant replied. Dkt. # 98.

### I.

On September 28, 2009, a man robbed the MidFirst Bank branch office near 41st Street and South Peoria Avenue, Tulsa, Oklahoma. Dkt. # 26, at 2. The man then escaped, although surveillance cameras in the bank and at a nearby business captured images of the man. Id. On October 5, 2009, a man entered the International Bank of Commerce branch office near 71st Street and South Memorial Drive, Tulsa. The man robbed the bank and fled, although surveillance cameras again provided images of the robbery. Id. Investigators released photographs to the media, and they received several tips that defendant was the suspected robber. Id. Based on the information in the

tips and on their own investigation, officers arrested defendant without a warrant on October 6, 2009. Id. at 2-3. Officers later sought and received a search warrant for defendant's vehicle, which led to the discovery of a firearm and other evidence. Id. at 3. Defendant was held in the David L. Moss Criminal Justice Center in Tulsa, Oklahoma, pending trial on state law criminal charges. Dkt. # 4, at 1.

On January 6, 2010, a federal grand jury returned an indictment against defendant, charging him with two counts of bank robbery (counts one and three), one count of brandishing and possessing a firearm in furtherance of a crime of violence (count two), and one count of possession of a firearm in furtherance of a crime of violence (count four). Dkt. # 2. Defendant was arraigned on January 15, 2010, and counsel was appointed. Dkt. # 10. On February 2, 2010, a superseding indictment was returned; it included the four counts from the original indictment and added one count of felon in possession of firearm and ammunition (count five). Dkt. # 18.

Defendant filed a motion to suppress evidence, arguing that the arresting officers lacked probable cause to arrest, that the search warrant was improperly issued because the underlying affidavit did not establish probable cause, that the affidavit contained false or misleading information, and that the good faith exception to the warrant requirement was inapplicable. Dkt. # 26. The Court held an evidentiary hearing on March 8, 2010, at which Tulsa Police Department (TPD) Detective Chris Stout, Claremore Police Department (CPD) Investigator John Singer, and Federal Bureau of Investigation (FBI) Special Agent Matthew McCullough testified. Dkt. # 34. Assistant United States Attorney (AUSA) Dennis Fries represented plaintiff at the hearing. Id.

Each of the three officers testified about their role in the investigation. Detective Stout testified that he began investigating the robberies after the first robbery occurred on September 28,

2009. Dkt. # 76, at 6. He related his interviews with the eyewitnesses to the robberies, who gave descriptions of the suspect and his vehicle. Id. at 8, 11. Using surveillance video, officers identified the vehicle in which the suspect escaped as a purple Mercury Cougar. Id. at 14-16. After releasing photographs from the robberies, Detective Stout received three tips regarding the suspect. Id. at 16. The first, given by a confidential informant, identified defendant by name as the suspect, provided a physical description, and noted that he drove a purple Mercury Cougar. Id. at 16-17. The second, received anonymously through the Crime Stoppers hotline, provided the same information. Id. at 18-19. The third, made by Jeff Bradshaw, included details of a conversation between Bradshaw and defendant in which defendant admitted to committing the two robberies. Id. at 22-23. Bradshaw had previously been incarcerated with defendant, and the two met by coincidence at the Claremore Indian Hospital shortly after the second robbery. Id. at 23-24. Detective Stout gained access to photographs of defendant and found that defendant's physical attributes approximately matched the witnesses' descriptions of the robbery suspect. Id. at 17.

Detective Stout contacted other law enforcement agencies to assist in the search for defendant. Id. at 25. Officers located defendant, along with his vehicle, at the Claremore Indian Hospital, and they arrested him there. Id. Detective Stout was not present at the scene of the arrest. Id. Following defendant's arrest, his vehicle, a purple Mercury Cougar, was towed to an impound yard in Claremore, Oklahoma. Id. at 29-30. On October 8, 2009, Detective Stout provided a local officer, Investigator Singer, with case reports, and Detective Stout prepared an affidavit for a search warrant for defendant's vehicle. Id. at 33. The affidavit did not contain all of the information related to the case; it did not state that one witness described the suspect's vehicle as a Pontiac Bonneville, nor did it state that several eyewitnesses failed to identify defendant in a photo array. Id. at 35-36,

3

40, 42. Investigator Singer, after reviewing the reports and discussing the case with Detective Stout, signed the affidavit and applied for a search warrant for defendant's vehicle, and a special district judge in Rogers County, Oklahoma signed the warrant. Id. at 33-34. Detective Stout and Investigator Singer searched the vehicle and found, among other things, a semi-automatic pistol. Id. at 47-48.

Investigator Singer testified that he first became involved with the robbery investigation on October 6, 2009, after a TPD officer requested assistance from local law enforcement near Claremore, Oklahoma. Id. at 51. Following a call from the Sheriff of Rogers County, Oklahoma, Investigator Singer proceeded to the Claremore Indian Hospital and conducted surveillance on a purple Mercury Cougar parked in the parking lot. Id. at 51-52. Defendant was inside the vehicle. Id. at 52. Fifteen to twenty minutes after Investigator Singer began his surveillance, members of other law enforcement agencies, including the FBI, arrived. Id. at 53. Special Agent McCullough, assisted by Investigator Singer and other officers, arrested defendant. Id. at 54. After the administrator of the hospital requested that the vehicle be removed from the parking lot, Investigator Singer arranged for a local company to tow and impound it in a locked storage facility. Id. at 54-55. He sealed the vehicle and observed it being securely stored at the storage facility. Id. at 55.

On October 8, 2009, Investigator Singer met with Detective Stout. Id. at 57. He read the affidavit that Detective Stout had prepared, as well as the available police reports on the robberies. Id. At that time, Investigator Singer was aware that the affidavit did not include the fact that witnesses had not identified defendant as part of a photo array, but he was unaware that a witness had identified the suspect's vehicle as a Pontiac Bonneville. Id. at 59-60. Investigator Singer signed and presented the affidavit and application for a search warrant to a special district judge in Rogers

4

County, Oklahoma. Id. at 57. After issuance of the warrant, Investigator Singer and Detective Stout together performed a search of the vehicle. Id. at 67.

Special Agent McCullough testified that he first received orders to assist in the bank robbery investigation on October 6, 2009. Id. at 70. After speaking with TPD officers and learning of defendant's location, Special Agent McCullough proceeded to the Claremore Indian Hospital. Id. at 71. Along with the other law enforcement officers present, Special Agent McCullough approached the defendant's vehicle and ordered him to exit. Id. A CPD officer placed defendant in handcuffs, and afterwards Special Agent McCullough transported defendant to Tulsa, Oklahoma. Id. at 72-73. Special Agent McCullough testified that, while being transported, defendant asked who "dimed him out," to which Special Agent McCullough responded, "No one." Id. at 77-78.

The Court issued an opinion and order on March 19, 2010, denying defendant's motion to suppress. Dkt. # 35. The Court ruled that: under the totality of the circumstances, the officers had probable cause to arrest defendant, even though witnesses had failed to identify him, id. at 10; the affidavit for a search warrant was sufficient to establish probable cause, id. at 12; the non-inclusion of the witnesses' failure to identify defendant and the witness's statement about a Pontiac Bonneville were not material omissions from the affidavit, id. at 14-15; and the officers were entitled to rely on the warrant in good faith, id. at 17.

Defendant proceeded to trial on March 22, 2010. Dkt. # 47. Plaintiff, represented by AUSA Fries and AUSA Matthew Cyran, presented five witnesses on the second day of trial, including Detective Stout, Investigator Singer, and Special Agent McCullough. Dkt. # 78, at 1, 2. The testimony that each of the officers gave during trial approximated the testimony given during the suppression hearing, although Detective Stout's discussion of the warrant process was highly

5

abbreviated. See id. at 25-76. On March 23, 2010, a jury found defendant guilty on all five counts of the superseding indictment. Dkt. ## 54, 55. The Court sentenced defendant to a total term of 744 months, and entered a judgment and commitment on June 29, 2010. Dkt. # 69. Defendant appealed his conviction to the Tenth Circuit Court of Appeals, which affirmed on April 29, 2011. Dkt. # 81, see also United States v. Thompson, 425 F. App'x 695 (10th Cir.), cert. denied, 132 S. Ct. 330 (2011).[1] Defendant filed a petition for writ of certiorari in the United States Supreme Court, but the Supreme Court denied the petition on October 3, 2011. Dkt. # 84; see also Thompson v. United States, 132 S. Ct. 330 (2011). Defendant's conviction became final on that date. United States v. Prows, 448 F.3d 1223, 1227 (10th Cir. 2006) (citing Clay v. United States, 537 U.S. 522, 527 (2003)). Thus, he had until October 3, 2012, to file a timely motion under § 2255.

On October 21, 2013, defendant filed his motion to vacate, set aside, or correct sentence pursuant to § 2255. Dkt. # 85. He claims to have discovered new evidence relevant to his case on

---

[1] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

August 6, 2013, id. at 11-12, which he claims made his motion timely under § 2255(f)(4).[2] His alleged new evidence is that, on June 9, 2010, Investigator Singer was called to testify at a suppression hearing in United States of America v. Grant Andrew Stout, No. 10-CR-0050-JHP-1 (N.D. Okla. June 9, 2010). Investigator Singer admitted that he was on probation with the CPD from 1999 to 2001. United States v. Stout, No. 10-CR-0050-JHP-1, Dkt. # 73, at 8. While driving a police vehicle during that probationary period, Investigator Singer caused an accident with another police vehicle. Id. He lied to his supervisor about the accident, claiming that he hit a deer. Id. To substantiate his story, he put deer hair in the grill of his vehicle. Id. The magistrate judge found that this information should be disclosed under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). Id. at 4-5. However, in his report and recommendation on the motion to suppress, the magistrate judge noted that he believed Investigator Singer's testimony to be credible. United States v. Stout, No. 10-CR-0050-JHP-1, Dkt. # 44, at 5. The district court agreed,

---

[2] On its face, defendant's motion is untimely, as it was filed more than one year after his conviction became final. Defendant argues that his claims rest on facts that "could [not] have been discovered" until August 2013, making his motion timely. 28 U.S.C. § 2255(f)(4). However, the statute requires that the new evidence could not have been discovered earlier through the exercise of due diligence. Id. While defendant is correct that the impeachment evidence concerning Investigator Singer was initially provided to the court in a sealed motion, United States v. Stout, No. 10-CR-0050-JHP-1, Dkt. # 29, that evidence was later made public, both in a report and recommendation on Stout's motion to suppress, id., Dkt. # 44, and in the district judge's opinion on the same motion. Id., Dkt. # 48. The report and recommendation was entered on June 11, 2010, and the opinion was entered on July 9, 2010. Id., Dkt. ## 44, 48. Additionally, a transcript of the suppression hearing, including Investigator Singer's direct testimony regarding his past actions, was available on December 21, 2010. Id., Dkt. # 79. Thus, the newly-discovered information could have been discovered through the exercise of due diligence in 2010. However, the Court will not address the issue of the untimeliness of the petition because the plaintiff did not raise the statute of limitations in its response. See Dkt. # 97.

7

finding that, despite his actions while on probation, Investigator Singer was a credible witness. United States v. Stout, No. 10-CR-0050-JHP-1, Dkt. # 48, at 4.

## II.

Defendant has stated two grounds for relief in his § 2255 motion. First, he claims that plaintiff withheld impeachment evidence about Investigator Singer's past that it should have disclosed under Giglio. Dkt. # 85, at 4-5. Second, defendant claims that AUSA Fries, who represented plaintiff at both the suppression hearing and the trial, engaged in prosecutorial misconduct by withholding the evidence regarding Investigator Singer. Id. at 6. Defendant's motion to supplement seeks to add a third ground for relief, claiming that defendant's right to due process was violated prior to trial. Dkt. # 91, at 2.

### A. Withheld Impeachment Evidence

Defendant argues that, under Giglio, plaintiff should have disclosed the information about Investigator Singer to defendant, and that the failure to do so violated defendant's constitutional rights to due process and a fair trial. The suppression of evidence material to either guilt or punishment violates due process, regardless of the good faith of the prosecutor. Brady v. Maryland, 373 U.S. 83, 87 (1963). Where a prosecution witness's testimony could determine a defendant's guilt or innocence, evidence that could be used to impeach that witness cannot be suppressed without violating due process. Giglio, 405 U.S. at 154. "In order to establish a *Brady* or *Giglio* violation, 'the defendant bears the burden of establishing (1) that the prosecution suppressed the evidence, (2) that the evidence was favorable to the accused, and (3) that the evidence was material.'" United States v. Gonzalez-Montoya, 161 F.3d 643, 649 (10th Cir. 1998) (quoting Smith v. Sec'y of N.M. Dep't of Corr., 50 F.3d 801, 824 (10th Cir. 1995)).

8

Assuming that defendant has satisfied the first two elements,[3] defendant's claim fails because defendant has not shown that Investigator Singer's testimony was material. "[T]he criterion of materiality is met only if there is a 'reasonable probability' that the outcome of the trial would have been different had the evidence been disclosed to the defense." Id. (citing United States v. Bagley, 473 U.S. 667, 682 (1985)); see also Kyles v. Whitley, 514 U.S. 419, 434 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."). Courts must "consider the significance of the suppressed evidence in relation to the entire record." Id. at 650.

Defendant repeatedly states that Investigator Singer was a "central government witness" or "key government witness" in the case against him. Dkt. # 85, at 4, 5, 6. "[W]here a prosecuting witness is not key to the government's case, his credibility is not material; hence the failure to reveal impeachment evidence concerning a minor witness does not violate *Brady*." United States v. Buchanan, 891 F.2d 1436, 1444 (10th Cir. 1989). A witness is key, or critical, if he is the only link between the accused and the crime, United States v. Torres, 569 F.3d 1277, 1283 (10th Cir. 2009); see also Nuckols v. Gibson, 233 F.3d 1261, 1266 (10th Cir. 2000), or if he is "indispensable,"

---

[3] Although not discussed by either party, there is an unanswered question regarding the first element. Defendant's suppression hearing and trial were held in March 2010. See Dkt. ## 34, 48. However, the hearing at which Investigator Singer revealed his actions while on probation occurred in June 2010. United States v. Stout, No. 10-CR-0050-JHP-1, Dkt. # 73. There is no evidence showing that Investigator Singer revealed his past actions to plaintiff prior to June 2010. Moreover, while AUSA Fries was involved in all stages of defendant's case, there is no evidence showing that he had any involvement in or knowledge of the later case. Thus, there is no evidence that he ever knew about Investigator Singer's past. However, neither party raised this issue and, as the case can be decided on the third element, the Court need not address the first element.

Douglas v. Workman, 560 F.3d 1156, 1175 (10th Cir. 2009), or "essential." United States v. Robinson, 583 F.3d 1265, 1271 (10th Cir. 2009). By contrast, a witness is not critical where the witness's testimony is duplicated by other witnesses, United States v. Cooper, 654 F.3d 1104, 1123 (10th Cir. 2011) ("A review of the evidence here demonstrates that Mr. Gleason—although an important witness—was not a crucial or critical witness to the government's case because several other co-conspirators provided commensurate testimony." (emphasis omitted)), where the other available evidence is "overwhelming," United States v. Smith, 534 F.3d 1211, 1223 (10th Cir. 2008), or where the witness's testimony provides relevant background information but does not squarely address the defendant's guilt or innocence. United States v. Reese, 745 F.3d 1075, 1088-89 (10th Cir. 2014) (finding not critical the testimony of a witness who explained how an investigation began but who did not testify about defendants' involvement).

Under these precedents, Investigator Singer was not a critical witness to plaintiff's case. Investigator Singer's testimony at the suppression hearing and the trial covered two primary topics: defendant's arrest; and the application for and execution of the search warrant. Each of those topics was also a topic of testimony from another witness. At the hearing, Special Agent McCullough testified regarding defendant's arrest, Dkt. #76, at 71-73, and Detective Stout testified regarding the warrant process and the search of defendant's vehicle. Id. at 32-37, 47-49. The duplicative nature of Investigator Singer's testimony precludes him from being a critical witness on those topics. Cooper, 654 F.3d at 1123; see also Smith, 534 F.3d 1223. The only non-duplicative testimony that Investigator Singer provided is the type of background information that the Tenth Circuit found did not make a witness critical in Reese, 745 F.3d at 1088-89. Thus, Investigator Singer was not a critical witness at the suppression hearing.

The same is true for defendant's trial. Investigator Singer's testimony addressed the same topics that it did at the suppression hearing. Dkt. # 78, at 25-38. Special Agent McCullough's testimony was approximately the same as that given at the hearing. Id. at 68-73. Detective Stout's testimony regarding the search was the same, although his testimony regarding the warrant process was noticeably abbreviated. Id. at 58-62.[4] To the extent the testimony overlaps, it again renders Investigator Singer's testimony non-critical. Cooper, 654 F.3d at 1123. The remainder of Investigator Singer's testimony is, again, background information about the case, and a witness who provides the jury with that type of information is not a critical witness. Reese, 745 F.3d at 1088-89. The fact that Detective Stout did not testify as to the process of securing a warrant does not make Investigator Singer a critical witness, as that evidence was not "essential" to plaintiff's case. Compare Robinson, 583 F.3d at 1271 (finding "essential" the testimony of the only witness who saw the defendant, a felon, in possession of a firearm), with Reese, 745 F.3d at 1088-89 (deeming a witness's testimony about the beginning of an investigation not critical). The essential testimony in defendant's trial was that of the eyewitnesses to the robberies, of Jeff Bradshaw, who informed officers that defendant had admitted to the robberies, and of Detective Stout, who described in detail the results of the TPD investigation and the search of defendant's vehicle. Cf. Smith, 534 F.3d at 1223 ("Considering the weight of Mr. Torrence, her co-conspirator's, confession and testimony against [the defendant], along with the informants' testimony and that of numerous additional witnesses, the testimony of Mr. Cowger was not a crucial part of the government's case."). Investigator Singer was not, under Tenth Circuit precedent, a critical witness, and thus his credibility

---

[4] The reason for this is obvious. The Court scrutinizes the warrant process at the suppression stage, and the Court issued its ruling on the matter prior to trial. See Dkt. # 35. The jury has no role in this legal issue.

was not material. Buchanan, 891 F.2d at 1444. As defendant cannot prove the third element necessary to find a Giglio violation, his first ground for relief under § 2255 fails.

### B. Prosecutorial Misconduct

Defendant's second ground for relief under § 2255 is that AUSA Fries committed prosecutorial misconduct by not providing information about Investigator Singer's past to defendant. "We engage in a two-step process in reviewing claims of prosecutorial misconduct. First, we determine if the conduct was improper. Second, we determine if any improper conduct warrants reversal." United States v. Gordon, 173 F.3d 761, 769 (10th Cir. 1999) (citing United States v. Lonedog, 929 F.2d 568, 572 (10th Cir. 1991)). "Reversal is necessary only if the improper conduct influenced the verdict." Id. (citing United States v. Alexander, 849 F.2d 1293, 196 (10th Cir. 1988)). As discussed above, there was no Giglio violation in this case because Investigator Singer's credibility was not material at either the suppression hearing or trial.[5] Thus, there was no improper conduct, and plaintiff's argument fails at the initial step of the two-step process.

### C. Denial of Due Process

Defendant's motion to supplement purports to add a third ground for relief relating to a denial of defendant's constitutional right to due process. Dkt. # 91, at 2. However, the facts and legal analysis contained in that motion do not actually state a new ground for relief. Instead, the motion simply repeats what defendant already argues in his § 2255 motion, specifically that the government failed to disclose Giglio evidence and that plaintiff "had no alternative but to choose corruption" when it did not disclose the evidence. Id. at 2-3. The motion does not add a new ground for relief,

---

[5] Once again, there is no evidence that AUSA Fries knew about Investigator Singer's past actions.

nor does it provide new facts for consideration. As the Court has already addressed defendant's argument, defendant's motion to supplement is moot.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, Dkt. # 85, is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion to supplement, Dkt. # 91, is **moot**. A separate judgment is entered herewith.

**DATED** this 9th day of October, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE